# Staunton.

## ZIMMERMAN COMPANY, INCORPORATED, AND OTHERS V. DEY AND OTHERS.

September 20, 1917.

1. VARIANCE—*Bill in Equity—Suit to Annul Tax Deed.*—Where the gravamen of a bill was that the defendant obtained a tax deed without complying with the statutory requirements in the matter of his payments to the clerk, and facts were offered in evidence which tended to support the fundamental charges and general purposes and prayer of the bill, but which were at variance with specific averments therein, the proper way to take advantage of the variance would have been to object to the evidence. This would have given the complainant an opportunity to amend the pleadings and would have worked prejudice to neither party.

2. VARIANCE—*Bill in Equity—Suit to Annul Tax Deed—Agreed Statement of Facts.*—There is no rule of pleading or any reason or authority that denies one litigant the benefit of a fact germane to the gist of his suit or action, even though at variance with some incidental allegation in his pleading, when such fact has been solemnly admitted to be true by his adversary, and agreed, without exception, to be considered as part of the evidence in the case.

3. TAX SALE—*Title in Commonwealth—Assessment Against Former Owner.*—When a sale is made to the Commonwealth for delinquent taxes, as in this case, the title thereafter remains in the Commonwealth until it is divested by a redemption or a purchase in the manner prescribed by law. Until one of these events takes place, there can be, properly speaking, no further assessment of the property against the former owner for taxation, for the plain reason that the property belongs to the State.

4. TAX SALE—*Sale to the Commonwealth—Redemption—Purchase from the Commonwealth.*—Where land is sold to the Commonwealth for . delinquent taxes it is thereafter to be carried on the land books, as required by section 469 of the Code of 1904, in the name of the former owner, but with a notation of the sale to indicate its status. When a former owner re-

deems, or a third person purchases, he will be required to pay to the clerk, along with certain fees and penalties, such sums as would have accrued for taxes if no sale to the Commonwealth had been made. If after the sale to the Commonwealth the land by apparently regular proceedings is assessed against the former owner and the taxes paid by him, it would be just, whether strictly according to law or not, for him to be given credit for such payments when he undertakes to redeem. But there is no reason why a third person, who purchases the land from the Commonwealth, should be permitted to appropriate to his benefit such payments by the former owner, and the statute prevents him from so doing. In such case the purchaser under section 666, Code of 1904, must pay the taxes for the intervening years between the purchase by the Commonwealth and his own purchase, whether paid by the former owner or not.

5. TAX DEED—*Validity—Sections 661 and 666, Code of 1904.*—In order to invoke and be entitled to the benefit of section 661, Code of 1904, he who has acquired a tax title, such as the one involved in the instant case, must have acquired it in accordance with the requirements of section 666; that is, section 661 was not intended to make a tax title good unless it has been acquired as the statute says, "in pursuance of section 666."

6. TAX DEED—*Validity—Compliance with Section 666, Code of 1904— Case at Bar.*—Suit was brought to annul a tax deed upon the ground that the purchaser was not required to comply with section 666, Code of 1904, by paying to the clerk "the amount for which the sale to the Commonwealth was made and the taxes and county levies to the city, town or county or district in which the land is situated, *together with such additional sums as would have accrued from taxes, levies and interest if such real estate had not been so purchased by the Commonwealth, etc.*" The particulars in which it was charged that this provision of the statute was ignored are, (1) that the purchaser was not required to pay anything on account of the years in which, after the sale to the Commonwealth, the former owner himself paid the taxes assessed against him, and (2) that the purchaser did not pay the clerk, before obtaining his deed and within the time required by the statute, the city taxes for 1907, and the city and State taxes for 1908, both of which had accrued before his purchase and which he afterwards paid, not to the clerk, but to the city collector and the city treasurer, respectively, of the city of Roanoke.

*Held:* That these objections were both good because they were based upon a disregard by the purchaser and the clerk of vital and indispensable requirements of section 666 of the Code of 1904.

Appeal from a decree of the Corporation Court of the city of Roanoke. Decree for complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Hart & Hart* and *Jno. Dabney Smith,* for the appellants.

*G. A. Wingfield* and *Roy B. Smith,* for the appellees.

KELLY, J., delivered the opinion of the court.

This suit was brought by Janie White Dey, widow and administratrix of W. W. Dey, deceased, and by her two infant children, suing by next friend, to annul a deed from S. S. Brooke, clerk of the Corporation Court for the city of Roanoke, to J. E. Zimmerman, the deed having been made to complete a tax sale to the latter of certain lots in Roanoke city which had been returned delinquent for nonpayment of taxes assessed in the name of W. W. Dey.

A demurrer to the bill was overruled, and thereupon, the cause having been submitted upon the bill and exhibits, the answer of the defendants, and an agreed statement of facts, the court entered the decree under review, setting aside and annulling the deed.

The lots were duly returned delinquent for the year 1894 in the name of the owner, W. W. Dey, and sold to the Commonwealth for the nonpayment of the city and State taxes for that year. The commissioner of the revenue failed to note the sale on the land book, as required by section 469

of the Code, and the lots were thereafter assessed for taxes in the name of W. W. Dey for each succeeding year up to 1908, and were further returned delinquent in his name for nonpayment of city and State taxes for the years 1895, 1897, 1901, 1902, 1903 and 1904. He, however, paid the taxes that were thus irregularly assessed against him for the years 1896, 1898, 1899, 1900, 1905 and 1906.

On the first day of April, 1908, J. E. Zimmerman filed an application "to purchase under the provisions and requirements of section 666 of the Code of Virginia as amended March 5, 1900," the aforesaid lots, "sold on the 2nd day of December, 1895, in the name of W. W. Dey as delinquent for taxes due thereon for the year 1894, and purchased, by the Commonwealth of Virginia." A copy of this application was served on Dey in person on April 2, 1908. When he filed this application Zimmerman paid the clerk $5.71, being ten per cent. of the total amount of $57.10 paid by him for the purpose of completing his purchase and entitling himself to the deed. This amount was arrived at by taking as a basis the taxes for the year 1894 and the subsequent years up to 1908 for which Dey himself had not paid the taxes. If the calculation had disregarded such payments as were made in the intervening years by Dey, the total amount would have been $92.91, and the sum to be deposited by him with his application would have been $9.29.

The chief ground of attack upon the deed is that the purchaser was not required to comply with section 666 of the Code by paying to the clerk "the amount for which the sale to the Commonwealth was made and the taxes and county levies to the city, town or county or district in which the land is situated, *together with such additional sums as would have accrued from taxes, levies and interest if such real estate had not been so purchased by the Commonwealth, &c.*" The particulars in which it is charged

that this provision of the statute was ignored are, (1) that the purchaser was not required to pay anything on account of the years in which, after the sale to the Commonwealth, Dey himself paid the taxes assessed against him, and (2) that the purchaser did not pay the clerk, before obtaining his deed and within the time required by the statute, the city taxes for 1907, and the city and State taxes for 1908, both of which had accrued before his purchase and which he afterwards paid, not to the clerk, but to the city collector and the city treasurer, respectively, of the city of Roanoke.

. These objections are both good because they are based upon a disregard by Zimmerman and the clerk of vital and indispensable requirements of section 666 of the Code. Taking the objections up in their inverse order, the appellants contend that the appellee cannot rely upon the failure of Zimmerman to make full and timely payment of the city taxes for 1907 and of the State and city taxes for 1908, because the bill alleges that Dey himself paid the taxes for 1907 and 1908. To sustain this contention would carry to an entirely unreasonable and illogical extent the wise and wholesome general rule that the judgments and decrees of the courts must be based upon the pleadings, and that litigants must not be allowed to allege one state of facts and recover upon another. The bill in this case, it is true, contains an allegation that "Zimmerman failed to pay any part of said taxes that would have accrued for the years 1898, 1899, 1900, 1901, 1905, 1906, 1907, 1908 * * * which said taxes had been paid by the said Dey," thus necessarily averring that Dey had paid the city and State taxes for 1908, and the city taxes for 1907, and it developed as a matter of fact that Dey had not paid these particular taxes. But the gravamen of this bill is that Zimmerman obtained a tax deed without complying with the statutory requirements in the matter of his payments

to the clerk, and when facts were offered in evidence which tended to support the fundamental charges and general purpose and prayer of the bill, but which were at variance with specific averments therein, the proper way to take advantage of the variance would have been to object to the evidence. This would have given the complainant an opportunity to amend the pleadings and would have worked prejudice to neither party. Instead of doing this, however, the appellants entered into an agreed statement wherein the very facts here relied upon by the appellees and which the appellants ask us to ignore, were, without any sort of saving or exception, agreed to be "considered as proven in this case." We do not know of any rule of pleading or any reason or authority that will deny one litigant the benefit of a fact germane to the gist of his suit or action, even though at variance with some incidental allegation in his pleading, when such fact has been solemnly admitted to be true by his adversary, and agreed, without exception, to be considered as part of the evidence in the cause.

But coming now to the other particular in which it is claimed that the appellants did not comply with section 666, we shall find that even if Dey had paid the taxes for 1907 and 1908, or if he were estopped by his pleading from denying that he paid them, such payments by him, unless he had also paid enough to fully redeem the lots, would have been irregular and erroneous, and would not have entitled Zimmerman to any credit therefor; and that the clerk allowed him improper credits for the years between 1894 and 1908, in which it is admitted that Dey did pay the taxes.

When a sale is made to the Commonwealth for delinquent taxes, as in this case, the title thereafter remains in the Commonwealth until it is divested by a redemption or a purchase in the manner prescribed by law. Until one of these events takes place, there can be, properly speaking,

no further assessment of the property against the former owner for taxation, for the plain reason that the property belongs to the State. (See *Dooley* v. *Christian,* 96 Va. 534, 537, 32 S. E. 54; *Parsons* v. *Newman,* 99 Va. 298, 303, 38 S. E. 186; Minor's Law of Tax Titles, 84.) The land thus sold is thereafter to be carried on the land books, as required by section 469 of the Code, in the name of the former owner, but with a notation of the sale to indicate its status. When a former owner redeems, or a third person purchases, he will be required to pay to the clerk, along with certain fees and penalties, such sums as would have accrued for taxes if no sale to the Commonwealth had been made. If the commissioner of the revenue, after a sale to the Commonwealth, neglects his duty and fails to note the sale, and the land is, for subsequent years, by apparently regular proceedings, assessed against the former owner and the taxes paid by him, it would certainly be just, whether strictly according to law or not, for him to be given the credit for such irregular payments, in case he should thereafter undertake to redeem the land from the Commonwealth. But there is no just reason why a stranger, like Zimmerman in this case, should be permitted to come in and appropriate the benefit of such credits; and the statute is so written, whether advisedly and for that purpose or not, as to prevent him from so doing. Zimmerman's right in this case, and his only right under the statute, was to purchase the lands for the amount of the taxes for which the sale was made to the Commonwealth, and such other amounts as would have become due for taxes if the sale had not been made. Whether, if Zimmerman had paid the taxes for all the intervening years after 1894, as in effect proposed by him in his application and as required by the statute, so that the State would thus have collected double the amount of the taxes for some of the years, there would have been any relief for Dey as to the sums erroneously

paid by him, is not here a material question. He probably would have the same remedy open to him that is open to any other person who has paid taxes erroneously assessed against him. But, in any event, it is certain that the statute was never intended to confer any such favors or bene- fits on purchasers of tax titles as is claimed by the appellants in this case.

It is urged on behalf of the appellants, that the statute itself sustains their position because, when Zimmerman came to make final settlement with the clerk, he had the right to purchase the property "by paying to the clerk *all remaining taxes,* levies, interest, penalties, fees and costs, and by paying all city, town and county taxes and levies *remaining unpaid,* together with all interest and penalties" as provided for by the express terms of section 666. The language just quoted does appear in the statute, but considering the section as a whole we think this language has the same meaning as that contained in the preceding part of the section, fixing the amount to be paid as "the amount for which the sale to the Commonwealth was made and the taxes and county levies due the city, town or county, or district in which said land is situated, together with such additional sum as would have accrued from taxes, levies and interest if such real estate had not been so purchased by the Commonwealth, with interest," etc.

It is further contended, however, and this raises the most important question in the case, that the failure of the clerk to demand, and of the purchaser to pay, the sums required by section 666, if there was such failure, is cured, and the deed rendered valid, by the terms of section 661 of the Code.

In *Thomas* v. *Jones,* 94 Va. 756, 27 S. E. 813, there was a question as to whether the notice to the personal representative of the former owner, as then required by section

666, had been properly served, and this court held that the service was probably good, but that the question of defective service was immaterial because the purchaser had already obtained his deed which was "subject to be defeated only by proof that the taxes or levies for which the real estate was sold were not properly chargeable thereon, or that the taxes and levies properly chargeable on such real estate have been paid;" and the opinion then added: "It follows from what has been said that no valid objection has been shown to the deed, or to the proceedings which led up to it." Judge Buchanan dissented, but the report of the case does not indicate the ground of his dissent. No subsequent case in Virginia has followed *Thomas* v. *Jones* in its full effect.

In *Virginia Coal Co.* v. *Thomas,* 97 Va. 527, 34 S. E. 486, the sale to the Commonwealth was attacked on the ground that the treasurer did not make it on the day for which it was advertised, and did not legally adjourn it to the day on which it was finally made. The report of the treasurer showed a regular adjournment, the alleged illegal adjournment was denied in the answer, the evidence was conflicting and inconclusive, and this court held that in this state of the case the decision of the lower court upon this question of fact, in favor of the validity of the proceedings under which the sale was made, must be upheld. The opinion then proceeded to show that section 661 added further strength to the position of the purchaser, who had already obtained his deed. It is to be observed, however, that while *Thomas* v. *Jones, supra,* is cited with apparent approval in *Va. Coal Co.* v. *Thomas,* there was not in the latter case a failure in any respect to comply with the provisions of section 666, Judge Keith delivering the opinion and using this significant language: "So that Thomas having complied with all the requirements of section 666 comes within the protection of section 661."

In *Va. B. & L. Co.* v. *Glenn,* 99 Va. 460, 467, 39 S. E. 136, 139, Judge Cardwell, delivering the unanimous opinion of the court, said: "In *Thomas* v. *Jones, supra,* the bill to set aside the deed was filed by the holder of a vendor's lien, the previous owner of the property not being a party to the suit, and as the statute was when the deed in that case was made it was not required that notice of the application to purchase land should be served on a creditor whose debt was secured thereon, and there was no allegation in the bill of entire lack of notice, but of a defective notice of the application. The deed in that case was held to be valid and within the protection of section 661, upon the ground that no valid objection had been shown to the deed, or to the proceedings which led up to its execution."

This case of *Va. B. & L. Co.* v. *Glenn,* in its effect, greatly qualified, if it did not entirely overrule, *Thomas* v. *Jones,* in the extent to which the latter case carried the curative force of section 661 of the Code.

The learned judge of the corporation court filed in this cause a written opinion, from which we quote the following extract, omitting his reference to *Thomas* v. *Jones* and *Va. Coal Co.* v. *Thomas, supra,* which have already been sufficiently adverted to:

"Counsel for defendants contend that section 661 of the Code takes away from the plaintiffs the right to raise this objection, and validates the deed, notwithstanding this failure on the applicant's part to pay the correct amount of the consideration. This is the single question for decision. I have examined the decisions of our Court of Appeals, and so far as I can find, this exact question has not been directly passed upon. I think, however, the principle involved has been settled by the decisions. Section 661, or that portion applicable to this case, reads as follows:

" 'When the purchaser of any real estate sold in pursu-

ance of section 666, has obtained a deed therefor, and the same has been duly admitted to record in the county or corporation in which such real estate lies, the right or title to such estate shall stand vested in the grantee, etc., subject to be defeated only by proof (one) that the taxes or levies for which said real estate was sold were not properly chargeable thereon; or (two) that the taxes and levies properly chargeable on such real estate have been paid; or (three) that the notice of the application to purchase has not been duly given; or (fourth) that the payment or redemption of said real estate was prevented by fraud or concealment on the part of the purchaser.'

"Upon reading the earlier decisions of our Court of Appeals in tax title cases, one clearly sees that it has been a uniform policy to require a strict compliance with the statute in order to divest a land-owner of his rights in his land. This is because such statutes are penal in their nature and entail forfeitures. *Wilson* v. *Bell*, 7 Leigh (34 Va.) 22; *Boon* v. *Simmons*, 88 Va. 258, 259 [13 S. E. 439]; *Bond* v. *Pettit*, 89 Va. 474 [16 S. E. 666].

"A careful study of the more recent decisions, I also think, shows that our courts do not mean to depart from this policy, and that a proper construction of section 661 does not involve a departure from this well settled policy. As the decisions clearly show, in order to invoke and be entitled to the benefit of section 661, he who has acquired a tax title, such as the one here involved, must have acquired it in accordance with the requirements of section 666; that section 661 was not intended to make a tax title good unless it has been acquired as the statute says, 'in pursuance of section 666.'

    &ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;

"In the case of *Thomas* v. *Jones*, 98 Va. 323, 331 [36 S. E. 382, 385], the deed was invalidated and Keith, Presi-

dent, in his opinion on page 331 uses this language: 'Appellant cannot be permitted to rely upon the deed executed to him by the clerk to cure any defects which may exist in the course of the proceedings under which he claims.'

"In the case of *Virginia Building and Loan Company* v. *Glenn,* 99 Va. 460 [39 S. E. 136], the deed was held invalid, and in the opinion Cardwell, Judge, says: 'In no view of this statute, providing how title to land held by the Commonwealth for delinquent taxes may be acquired by a purchaser, does it appear that the legislature intended that the purchaser should be protected by the provisions of section 661, if he had not acquired his deed by compliance with the provisions of section 666.' Again, the opinion reads: 'Before the purchaser under section 666 can claim the benefit of the terms of section 661, he must show that he has fulfilled the provisions of section 666, and until he is in a position to do this, there is no authority for making him a deed to the property.'

"In the case of *Bowe* v. *City of Richmond,* 109 Va. 254 [64 S. E. 51], Buchanan, Judge, in delivering the opinion, says: 'In order to claim the benefit of the provisions of section 661, as was held in *Virginia Building and Loan Company* v. *Glenn,* 99 Va. 460 [39 S. E. 136], a purchaser under section 666 of the Code must comply with all the provisions of the latter section.' I think this case comes very near passing on the identical question involved in the instant case, viz: that the applicant's right to purchase is dependent upon his paying to the clerk all taxes, levies, penalties, and so forth, both city and State, and at the time fixed by the statute.

"The case of *Wright* v. *Carson,* 110 Va. 498 [66 S. E. 37], relied on by counsel for the defendant, I do not think changes the effect of the decisions above quoted. In this case the deed was upheld, but only two questions were decided: (1) that the recitals in a deed from the clerk to

the purchaser under section 666 are at least *prima facie* evidence, and (2) that the application to purchase was properly filed in the clerk's office of the Corporation Court of Roanoke where the land lay at the time application was filed, although it was taken into the city by extension of its corporate limits since the sale to the Commonwealth.

"The case of *Crawford* v. *Floyd*, 112 Va. 699 [72 S. E. 711], the only other case relied on by counsel for the defendant, I likewise do not think is in conflict with the above decisions. The only attack made upon the deed in this case, which contained proper recitals, was upon the ground that the ten per cent. of the purchase price, required to be deposited with the clerk at the time of application, was not so deposited. The court held that the recitals in the deed were *prima facie* evidence, and they were not overcome by sufficient evidence to the contrary. Even in this case, I think the opinion of Cardwell, Judge, clearly shows that the court was of opinion that the legislature did not intend by section 661 to make the recitals in the deed from the clerk conclusive evidence of compliance with the essential requisites of section 666.

"In the case of *Coles' Heirs* v. *Jamerson*, 112 Va. 311 [71 S. E. 618, 50 L. R. A. (N. S.) 407], the deed was held invalid because it failed to recite that the land was sold by the treasurer for the non-payment of taxes and the sale was reported to the court and confirmed; that they were circumstances appearing in the clerk's office in relation to the sale,' and their omission from the deed was fatal to it. The only bearing this case has on the instant case is to show that our court has in no sense departed from its original policy of requiring a strict compliance with the requisites of the statute, in order to divest a land owner of his rights in his land, for the same purpose I refer to the case of *Roller* v. *Armentrout*, 118 Va. 173 [86 S. E. 906].

91

"The case of *Gordon* v. *Joyner*, 112 Va. 347 [71 S. E. 652], holds that the authority of the clerk to make a deed to the purchaser is a mere naked power, not coupled with an interest, and hence every requisite to its exercise must be strictly complied with, and that a failure to comply with the essential requisites of the statute are not cured by section 661 of the Code."

We concur in the views expressed and conclusions reached in the foregoing extract from Judge King's opinion. Considered primarily, the question is not entirely free from doubt, and there are expressions in some of the decisions of this court with reference to the meaning and effect of section 661 which lend color to the contention of the appellants. We believe, however, that the decree complained of is in accord with a correct construction of sections 661 and 666 of the Code, and with a proper interpretation of the decisions of this court which have dealt with tax titles acquired under those sections.

The decree is affirmed.

*Affirmed.*